**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**KEVIN LOPEZ,**                                                                                    **Plaintiff,**

**v.**                                    **CIVIL ACTION NO. 3:24-cv-00285**

**DETECTIVE AMANDA V. MINTER,**

**&**

**OFFICER WILLIAM E. GAGE,**
Serve: Henrico County Police Department
          7721 East Parham Road
          Henrico, Virginia 23294

**&**

**SERGEANT JUSTIN C. PIKE,**
Serve: Henrico County Police Department
          7721 East Parham Road
          Henrico, Virginia 23294

**&**

**SERGEANT BILLY D. DUKE,**
Serve: Henrico County Police Department
          7721 East Parham Road
          Henrico, Virginia 23294

**&**

**OFFICER ELIZABETH A. MASON,**
Serve: Henrico County Police Department
          7721 East Parham Road
          Henrico, Virginia 23294

**&**

Page **1** of **35**

**OFFICER EMMANUEL HERNANDEZ,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**K9 OFFICER KRIS MULLENS,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**DETECTIVE DEANNA M. DICKSON,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**DETECTIVE KEN W. HILL,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**OFFICER JACOB R. LAWSON,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**DETECTIVE MEGAN E. LYNCH,**
<u>Serve</u>:  Henrico County Police Department
        7721 East Parham Road
        Henrico, Virginia 23294

**&**

**JOHN DOES 1-10,**                                                    **Defendants.**
**Individuals who are employees or agents**
**of the Henrico County Police Division,**

**PLAINTIFF'S OCTOBER 7, 2024 AMENDED COMPLAINT**

Plaintiff Kevin Lopez, by counsel, moves for judgment, joint and several, against the above-named Defendants on the grounds and in the amount set forth in this Complaint:

**NATURE OF ACTION**

1.    On June 25, 2023, Defendants unlawfully searched the curtilage of Mr. Lopez's home, arrested him without probable cause, interrogated him for multiple hours, and then imprisoned him for approximately 111 hours before releasing him because he was innocent.

2.    Defendants wrongly identified and accused Mr. Lopez as the perpetrator of sex offenses in Henrico County; specifically, public acts of obscenity and indecent exposure.

3.    Defendants' unlawful conduct violated Mr. Lopez's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I Sections 10 and 11 of the Virginia Constitution and breached their duties to Mr. Lopez under Virginia state tort law. Mr. Lopez sues under 42 U.S.C. § 1983, under Virginia state tort law, and under Virgina Code § 19.2-59 to hold Defendants accountable for their unlawful actions and to seek justice for himself.

4.    Mr. Lopez is entitled to compensatory and punitive damages from Defendants.

**PARTIES**

5.    Mr. Lopez is a 24-year-old resident of Henrico County, Virginia.

6.    Detective Minter is a sworn police officer in the Henrico County Police Division.

7.    Officer Gage is a sworn police officer in the Henrico County Police Division.

8.    Sergeant Pike is a sworn police officer in the Henrico County Police Division.

9.    Sergeant Duke is a sworn police officer in the Henrico County Police Division.

10.    Officer Mason is a sworn police officer in the Henrico County Police Division.

11.    Officer Hernandez is a sworn police officer in the Henrico County Police Division.

12.     K9 Officer Mullens is a sworn police officer in the Henrico County Police Division.

13.     Detective Dickson is a sworn police officer in the Henrico County Police Division.

14.     Detective Hill is a sworn police officer in the Henrico County Police Division.

15.     Officer Lawson is a sworn police officer in the Henrico County Police Division.

16.     Detective Lynch is a sworn police officer in the Henrico County Police Division.

17.     Defendants Does 1-10 are individuals that are employees or apparent employees of Henrico County, specifically working in the Henrico County Police Division. These individuals were tasked with the arrest and imprisonment of Mr. Lopez. Despite the exercise of due diligence, Mr. Lopez has not been able to ascertain the identity of these Defendants.

18.     All of the individuals named as Defendants in this Complaint were law enforcement officers, agents, and/or employees of Henrico County and were, at all times relevant to this Complaint, acting under color of state law and within the scope and course of their official duties.

## **FACTS**

19.     The United States Supreme Court decided *Florida v. Jardines*, 569 U.S. 1 (2013), on March 26, 2013, by a majority opinion authored by Justice Antonin Scalia.

20.     The United States Supreme Court held in *Jardines* that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Jardines,* 569 U.S. at 11-12. Justice Scalia explained:

> But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

*Id.* at 6 (internal citation omitted) (emphasis added).

> We therefore regard the area "immediately surrounding and associated with the home"—what our cases call the curtilage—as "part of the home itself for Fourth Amendment purposes." That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants," This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened."

*Id.* at 6-7 (internal citations omitted) (emphasis added).

> But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do that. An invitation to engage in canine forensic investigation assuredly does not inhere in the very act of hanging a knocker. To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector or **marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to—well, call the police**. The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose. Consent at a traffic stop to an officer's checking out an anonymous tip that there is a body in the trunk does not permit the officer to rummage through the trunk for narcotics. Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search.

*Id.* at 9 (**emphasis** added) (emphasis added).

21.     The United States Supreme Court, since March 26, 2013, has discussed, mentioned, or cited its decision in *Jardines* in approximately 13 other case opinions.

22.     The United States Court of Appeals for the Fourth Circuit, since March 26, 2013, has discussed, mentioned, or cited the United States Supreme Court's decision in *Jardines* in approximately 15 case opinions.

23.     The Virginia Supreme Court, since March 26, 2013, has discussed, mentioned, or cited the United States Supreme Court's decision in *Jardines* in approximately 5 case opinions.

24.     The illegality of a law-enforcement officer "marching his bloodhound into [a person's yard] before saying hello and asking permission" without a search warrant to search a home or its immediate surroundings was clearly established prior to June 25, 2023. *Id.* at 9.

25. Defendants had actual knowledge that it was unlawful to "march[] [a] bloodhound into [a person's yard] before saying hello and asking permission" without a search warrant to search a home or its immediate surroundings prior to June 25, 2023. *Id.* at 9.

26. Detective Minter attended the Henrico County Police Division's Police Academy.

27. Officer Gage attended the Henrico County Police Division's Police Academy.

28. Sergeant Pike attended the Henrico County Police Division's Police Academy.

29. Sergeant Duke attended the Henrico County Police Division's Police Academy.

30. Officer Mason attended the Henrico County Police Division's Police Academy.

31. Officer Hernandez attended the Henrico County Police Division's Police Academy.

32. K9 Officer Mullens attended the Henrico County Police Division's Police Academy.

33. Detective Dickson attended the Henrico County Police Division's Police Academy.

34. Detective Hill attended the Henrico County Police Division's Police Academy.

35. Officer Lawson attended the Henrico County Police Division's Police Academy.

36. Detective Lynch attended the Henrico County Police Division's Police Academy.

37. Detective Minter, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Detective Minter also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

38. Officer Gage, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Officer Gage also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

39.     Sergeant Pike, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Sergeant Pike also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

40.     Sergeant Duke, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Sergeant Duke also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

41.     Officer Mason, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Officer Mason also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

42.     Officer Hernandez, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Officer Hernandez also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

43.     K9 Officer Mullens, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. K9 Officer Mullens also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

44.     Detective Dickson, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Detective Dickson also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

45.     Detective Hill, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Detective Hill also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

46. Officer Lawson, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Detective Lawson also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

47. Detective Lynch, during the Academy, received instruction on search and seizure law, to include the holding in *Jardines*. Detective Lynch also learned that, absent an exigent circumstance, a search warrant is required to conduct a search of a home or its curtilage.

48. Detective Minter, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

49. Officer Gage, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

50. Sergeant Pike, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

51. Sergeant Duke, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

52. Officer Mason, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

53.    Officer Hernandez, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

54.    K9 Officer Mullens, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

55.    Detective Dickson, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

56.    Detective Hill, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

57.    Officer Lawson, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

58.    Detective Lynch, after the Academy, received additional training on search and seizure law, to include the holding in *Jardines*, on no less than an annual basis, and that training included the requirement to obtain a search warrant to conduct a search of the curtilage of a home.

59.    A Virginia law-enforcement officer may apply for a search warrant by preparing an Affidavit for Search Warrant (Virginia Form DC-338) and presenting it to a judicial official.

60.    Detective Minter did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

61. Officer Gage did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

62. Sergeant Pike did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

63. Sergeant Duke did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

64. Officer Mason did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

65. Officer Hernandez did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

66. K9 Officer Mullens did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

67. Detective Dickson did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

68. Detective Hill did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

69. Officer Lawson did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

70. Detective Lynch did not apply for a search warrant on June 25, 2023 to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia.

71. No search warrant was issued by a judicial officer in Henrico County to conduct a search of 2711 Dellrose Avenue in Henrico, Virginia on June 25, 2023.

72.     A Virginia law-enforcement officer may apply for an arrest warrant by preparing a Criminal Complaint (Virginia Form DC-311) and presenting it to a judicial official.

73.     Detective Minter did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

74.     Officer Gage did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

75.     Sergeant Pike did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

76.     Sergeant Duke did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

77.     Officer Mason did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

78.     Officer Hernandez did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

79.     K9 Officer Mullens did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

80.     Detective Dickson did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

81.     Detective Hill did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

82.     Officer Lawson did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

83. Detective Lynch did not apply for an arrest warrant on June 25, 2023 to arrest Mr. Lopez.

84. No arrest warrant was issued by a judicial officer in Henrico County authorizing the arrest of Mr. Lopez on June 25, 2023.

85. An arrest warrant was required by Virginia Code § 19.2-81 to arrest Mr. Lopez.

86. Mr. Lopez has no criminal history.

87. Mr. Lopez regularly works seven days as a week as a laborer to support his family.

88. On June 25, 2023, Mr. Lopez lived at 2711 Dellrose Avenue in Henrico, Virginia.

89. Mr. Lopez rented the home at 2711 Dellrose Avenue.

90. The following photograph shows the front of 2711 Dellrose Avenue:



91. The following photograph is an aerial view of 2711 Dellrose Avenue (identified by the red marker) and the surrounding area:



92.    There is a fence separating the front and backyards of 2711 Dellrose Avenue.

93.    The following photograph shows the gate to the backyard of 2711 Dellrose Avenue:



94.    There is a porch in the backyard of 2711 Dellrose Avenue.

95.    The following photograph shows the backyard porch of 2711 Dellrose Avenue:



96.    The porch is approximately 75 feet from Dellrose Avenue.

97.    The porch is approximately 75 feet from the alley behind 2711 Dellrose Avenue.

98.    The following photograph shows the view of the alley from the porch:



99.    The following photograph shows the alley behind 2711 Dellrose Avenue:

Page **14** of **35**



100.    The white shed in the above photograph is a part of 2711 Dellrose Avenue.

101.    The following photograph shows the view of the back of 2711 Dellrose Avenue from the alley:



102.    At all times on June 25, 2023, Mr. Lopez had a reasonable expectation of privacy in his home at 2711 Dellrose Avenue as well as its curtilage, to include the porch in the backyard.

103.    At approximately 22:00 hours on June 25, 2023, Henrico Police received a call for service concerning a suspicious situation at 2913 Greenway Avenue in Henrico, Virginia.

104.    2913 Greenway Avenue is approximately 0.3 miles from 2711 Dellrose Avenue as shown in the following image from Google Maps:



105.    Officer Gage was dispatched to 2913 Greenway Avenue at approximately 22:06 hours on June 25, 2023.

106.    Officer Mason responded to 2913 Greenway Avenue at approximately 22:10 hours.

107.    It was dark at that time and, as a result, visibility was limited.

108.    Officer Mason and Officer Gage spoke with two individuals at 2913 Greenway Avenue, who explained that they were in the kitchen making dinner when they saw a man at the back door looking into the kitchen. They stated that the man had his penis exposed and was

Page **16** of **35**

masturbating and that they both screamed and ran away. They explained that they believed that the man was standing on a white bucket, thought that the man had touched the window of the door, and described the man as being of Hispanic descent wearing a dark gray shirt and jeans.

109. Officer Gage and Officer Mason provided a description of the suspect (Hispanic male with dark gray shirt and jeans) to officers canvassing the area, to include Officer Hernandez.

110. Sergeant Pike and Sergeant Duke also responded to 2913 Greenway Avenue.

111. Once Sergeant Pike and Sergeant Duke arrived at 2913 Greenway Avenue, they requested additional units (specifically: K9 Officer Mullens, SVU Detective Dickson, and Forensics Detective Hill), and began coordinating a perimeter as well as the canvassing efforts.

112. Detective Minter, Officer Gage, Sergeant Pike, Sergeant Duke, Officer Mason, Officer Hernandez, Officer Mullens, Detective Dickson, Detective Hill, Officer Lawson, and/or Detective Lynch (hereinafter "Officer(s)"), participated in the search for a suspect that matched the description received at 2913 Greenway Avenue: Hispanic male with a dark gray shirt and jeans.

113. Officer(s), to include Officer Hernandez, while canvasing the area, went to the alley behind Mr. Lopez's home at 2711 Dellrose Avenue.

114. At that time, Mr. Lopez was sitting on the wooden steps of the porch in the backyard of 2711 Dellrose Avenue, shown in the following photograph:



115.    Mr. Lopez was not wearing clothing that matched the suspect's description: a dark gray shirt and jeans.

116.    Mr. Lopez was wearing a green shirt and brown work pants, as shown in the following photograph:



Page **18** of **35**

117. Mr. Lopez approached Officer(s), to include Officer Hernandez, in the alley behind 2711 Dellrose Avenue, spoke with Officer(s), and provided whatever help he could.

118. At no time did Mr. Lopez give Officer(s), to include Officer Hernandez, explicit or implicit permission to enter 2711 Dellrose Avenue, to include the previously described porch.

119. Officer(s), to include Officer Hernandez, learned in their interaction with Mr. Lopez in the alley behind 2711 Dellrose Avenue that Mr. Lopez did not fit the suspect's description because Mr. Lopez was not wearing a dark gray shirt and jeans.

120. Officer(s), to include Officer Hernandez, then left the alley.

121. Officer(s), to include Officer Hernadez, later returned to the alley behind 2711 Dellrose Avenue and requested Mr. Lopez's assistance with translating between Officer(s) and Spanish speaking persons at the intersection of Woodrow Terrace and Dellrose Avenue.

122. As requested, Mr. Lopez walked to the intersection of Woodrow Terrace and Dellrose Avenue, where he assisted Officer(s), to include Officer Hernandez, with translating between Officer(s) and the Spanish speaking persons.

123. Officer(s), to include Officer Hernandez, learned in their interaction with Mr. Lopez at the intersection of Woodrow Terrace and Dellrose Avenue that Mr. Lopez did not fit the suspect's description because Mr. Lopez was not wearing a dark gray shirt and jeans.

124. Once K9 Officer Mullens arrived at 2913 Greenway Avenue, he began a bloodhound track at approximately 23:34 hours, more than one hour and thirty-four minutes after the alleged crime, with the assistance of Officer Mason, Officer Lawson, and Officer Hernandez.

125. K9 Officer Mullens used a bucket at 2913 Greenway Avenue as the scent article.

126. At approximately 23:44 hours, one hour and forty-four minutes after the call for service concerning a suspicious situation at 2913 Greenway Avenue, K9 Officer Mullens' bloodhound alerted in front of 2711 Dellrose Avenue.

127. K9 Officer Mullens, Officer Mason, Officer Lawson, and/or Officer Hernandez notified Officer(s) of the bloodhound's alert in front of 2711 Dellrose Avenue.

128. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that Mr. Lopez lived at 2711 Dellrose Avenue, because they had interacted with Mr. Lopez twice earlier that evening in the alley behind 2711 Dellrose Avenue.

129. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that Mr. Lopez did not fit the suspect's description because Mr. Lopez was not wearing a dark gray shirt and jeans in either of the Officer(s)'s earlier interactions with Mr. Lopez.

130. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) did not have explicit or implicit permission from Mr. Lopez to enter or search 2711 Dellrose Avenue, including its front yard, backyard, and the previously described porch.

131. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Jardines,* 569 U.S. at 11-12.

132. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that a search warrant was required to enter or search 2711 Dellrose Avenue, including its front yard, backyard, and the previously described porch.

133. K9 Officer Mullens, after the bloodhound alerted in front of 2711 Dellrose Avenue, did not apply for a search warrant to conduct a search of 2711 Dellrose Avenue.

134. Officer Mason, after the bloodhound alerted in front of 2711 Dellrose Avenue, did not apply for a search warrant to conduct a search of 2711 Dellrose Avenue.

135. Officer Lawson, after bloodhound alerted in front of 2711 Dellrose Avenue, did not apply for a search warrant to conduct a search of 2711 Dellrose Avenue.

136. Officer Hernandez, after the bloodhound alerted in front of 2711 Dellrose Avenue, did not apply for a search warrant to conduct a search of 2711 Dellrose Avenue.

137. Officer(s), after the bloodhound alerted in front of 2711 Dellrose Avenue, did not apply for a search warrant to conduct a search of 2711 Dellrose Avenue.

138. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) did not have a search warrant from a judicial officer authorizing them to enter or search 2711 Dellrose Avenue, including its front yard, backyard, and the previously described porch.

139. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that a bloodhound alert alone is not sufficient to establish probable cause.

140. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that while the alert of a trained and reliable bloodhound may contribute to probable cause, it needs to be corroborated by additional evidence to establish probable cause.

141. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) only alleged justification for entering 2711 Dellrose Avenue was the bloodhound's alert.

142. K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s), before entering 2711 Dellrose Avenue, knew that Mr. Lopez lived at 2711 Dellrose Avenue and that Mr. Lopez did not fit the suspect's description because Mr. Lopez was not wearing a dark gray shirt and jeans in either of their earlier interactions Officer(s) had with him.

143.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) did not have probable cause—a reasonable basis to believe that the suspect was at 2711 Dellrose Avenue because of Officer(s) earlier interactions with Mr. Lopez at 2711 Dellrose Avenue.

144.    It has been well-established at all applicable times that both probable cause sufficient to support a search warrant and exigent circumstances are required to permit a warrantless entry and arrest in the home. *See Welsh v. Wisconsin*, 466 U.S. 740, 741 (1984); *Payton v. New York*, 445 U.S. 573, 590 (1980); *Alexander v. Commonwealth*, 19 Va.App. 671, 674, (1995).

145.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s), before entering 2711 Dellrose Avenue, knew that probable cause sufficient to support a search warrant and exigent circumstances was required for a warrantless entry and arrest at a home.

146.    "[W]arrantless entries into dwellings, followed by searches, seizures, and arrests therein . . . are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances." *Verez v. Commonwealth*, 230 Va. 405, 410 (1985); *see Welsh*, 466 U.S. at 750.

147.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) knew that there were no exigent circumstances to justify a warrantless search of 2711 Dellrose Avenue, including its backyard and previously described porch.

148.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) were not in hot pursuit of a fleeing suspect (i.e., "immediate or continuous pursuit of the [suspect] from the scene of a crime," *Welsh*, 466 U.S. at 753), considering:

      a.  No specific fleeing suspect had been identified by Officer(s),

      b.  The bloodhound track began at approximately 23:34 hours, more than one hour and thirty-four minutes after the alleged crime occurred,

c.  2711 Dellrose Avenue was 0.3 miles away from 2913 Greenway Avenue, and

d.  The bloodhound alerted in front of 2711 Dellrose Avenue at approximately 23:44 hours, one hour and forty-four minutes after the alleged crime occurred.

e.   Officer(s) had previously made contact with Mr. Lopez, were aware of his whereabouts and the location of his home, and there was no exigency to suggest that Mr. Lopez could not later be found at 2711 Dellrose Avenue.

149.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) had no reason to believe that there was evidence of an alleged crime at 2711 Dellrose Avenue that was in immediate danger of being destroyed (e.g., flushing drugs down a toilet).

150.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) had no reason to believe that there was an immediate need to assist persons who were seriously injured or threatened with serious injury at 2711 Dellrose Avenue.

151.    K9 Officer Mullens, after the bloodhound alerted in front of 2711 Dellrose Avenue and prior to entering 2711 Dellrose Avenue, did not apply for an arrest warrant to arrest Mr. Lopez.

152.    Officer Mason, after the bloodhound alerted in front of 2711 Dellrose Avenue and prior to entering 2711 Dellrose Avenue, did not apply for an arrest warrant to arrest Mr. Lopez.

153.    Officer Lawson, after bloodhound alerted in front of 2711 Dellrose Avenue and prior to entering 2711 Dellrose Avenue, did not apply for an arrest warrant to arrest Mr. Lopez.

154.    Officer Hernandez, after the bloodhound alerted in front of 2711 Dellrose Avenue and prior to entering 2711 Dellrose Avenue, did not apply for an arrest warrant to arrest Mr. Lopez.

155.    Officer(s), after the bloodhound alerted in front of 2711 Dellrose Avenue and prior to entering 2711 Dellrose Avenue, did not apply for an arrest warrant to arrest Mr. Lopez.

156.   K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) did not have an arrest warrant by a judicial officer authorizing them to arrest Mr. Lopez.

157.   K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) entered the gate to the backyard of 2711 Dellrose Avenue at approximately 23:44 hours from the front of the home. The following photographs show the path the Officer(s) traveled:

















158.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) only alleged justification for entering 2711 Dellrose Avenue was the bloodhound's alert.

159.    Upon information and belief, the bloodhound was not properly trained and/or reliable in following human scent, and the scent trail was so stale or contaminated as to be beyond the bloodhound's capabilities, considering the time and distance from the alleged crime scene.

160.    At the time K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) entered the gate to the backyard of 2711 Dellrose Avenue, Mr. Lopez was sitting on the porch steps in the backyard, watching a video on his phone, and drinking a beer.

161.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s), armed with a shotgun and a bloodhound, unlawfully detained Mr. Lopez by the porch.

162.    K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) placed Mr. Lopez in handcuffs and took him to the front steps of 2711 Dellrose Avenue.

163.   K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) seized Mr. Lopez's cell phone and, later, provided it to Detective Hill to extract its data.

164.   Mr. Lopez was cooperative with Officer(s) throughout the arrest. He provided them the password to his cell phone, answered their questions, and agreed to submit to a polygraph.

165.   Officer(s) transported Mr. Lopez to the Henrico County Public Safety Building at approximately 00:10 hours on June 26, 2023, where they interrogated him for multiple hours.

166.   After the interrogation, Officer(s) transported Mr. Lopez to the Henrico County Jail where he remained confined until he was released on June 30, 2023 at approximately 2:00 PM.

167.   During that time, Mr. Lopez lived in Cell 10 at the Henrico County Jail. There were no available beds, so he spent the first two nights sleeping on the floor.

168.   Being falsely imprisoned was emotionally traumatizing and humiliating for Mr. Lopez, particularly in light of the sexually deviant acts for which he was accused of and the fact that he did not know if he would ever be released. He doubted whether he could survive in prison and repeatedly told himself that he would "need to become a bad guy or kill [himself]."

169.   On June 28, 2023, Detective Lynch completed the forensic investigation of Mr. Lopez's cell phone and determined that the location data showed that Mr. Lopez was innocent.

170.   Despite Detective Lynch identifying exculpatory evidence, Mr. Lopez remained imprisoned, until June 30, 2023.

171.   On September 21, 2023, the Henrico County Police Department denied Mr. Lopez's Freedom of Information Act request, in whole, concerning the incident at issue in this lawsuit.

172.   On October 10, 2023, Mr. Lopez, by counsel, sent a letter to Andrew R. Newby (Henrico County Attorney), copying Frank J. Thornton (Henrico County Supervisor of Fairfield District), John Vithoulkas (Henrico County Manager), Shannon L. Taylor (Henrico County

Commonwealth's Attorney), and Eric D. English (Henrico County Chief of Police  Henrico County) requesting that Henrico County: (1) Apologize to Mr. Lopez, (2) Compensate Mr. Lopez for the  full and fair value of what he experienced, and (3) Review Henrico's policies to ensure this situation does not happen to anyone else. Mr. Lopez did not receive a response to his letter.

173. On October 10, 2023, Mr. Lopez, by counsel, sent notice of his claim to Henrico County Attorney Andrew R. Newby pursuant to Virginia Code § 15.2-209.

174. More than a year later, Mr. Lopez's reputation continues to suffer because of the Officer(s) recklessness, negligence, conscious disregard and deliberate indifference of his rights.

## COUNT 1

### 42 U.S.C. § 1983 Fourth Amendment Illegal Search and Seizure – False Arrest
### *Against all Defendants*

175. The facts and allegations set forth in all previous paragraphs are reasserted here.

176. This is a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the United States Constitution.

177. Defendants all caused Mr. Lopez to be falsely arrested.

178. Specifically, K9 Officer Mullens, Officer Mason, Officer Lawson, Officer Hernandez, and/or Officer(s) conducted a warrantless search of the curtilage of Mr. Lopez's home and person, including a scientifically unreliable "dog sniff" search, without probable cause, and thereafter caused Mr. Lopez's property to be seized and arrested Mr. Lopez without probable cause.

179. At no point on June 25, 2023 did any Defendant have a warrant to conduct a search of Mr. Lopez's home or its curtilage.

180. At no point on June 25, 2023 did any Defendant have a warrant to arrest Mr. Lopez.

181. At no point on June 25, 2023 did any Defendant have probable cause to believe that Mr. Lopez was guilty of the crimes they arrested and imprisoned him for.

182. At no point on June 25, 2023 did exigent circumstances exist to justify a warrantless intrusion onto Mr. Lopez's property.

183. Defendants arrested Mr. Lopez with no lawful authority to do so.

184. When Defendants seized Mr. Lopez's cell phone on the night of June 25, 2023, they possessed information that would lead any reasonable person to conclude that Mr. Lopez could not have committed the crimes for which they arrested and imprisoned him for.

185. Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information, including information provided by Mr. Lopez, which would lead them to conclude that the perpetrator could not have been Mr. Lopez

186. Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to Mr. Lopez's federally protected rights, entitling him to an award of punitive damages against Defendants.

    a. Defendants knew Mr. Lopez did not match the description of the suspect.

    b. Defendants knew where Mr. Lopez lived and his present location such that no exigency existed to justify an immediate warrantless intrusion onto his property.

    c. Upon discovering further exculpatory information, Defendants continued to imprison Mr. Lopez in confinement for an additional two days.

187. As a direct and proximate result of the actions of Defendants, Mr. Lopez has suffered damages in an amount in excess of $11,100,000, exclusive of costs and interest, plus attorneys' fees as authorized by law.

## **COUNT 2**

**42 U.S.C. § 1983 Fourth Amendment Illegal Search and Seizure – False Imprisonment**
*Against all Defendants*

188. The facts and allegations set forth in all previous paragraphs are reasserted here.

189.    This is a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the United States Constitution.

190.    Defendants all intended to, and actually did, confine Mr. Lopez by way of his arrest on June 25, 2023 and subsequent imprisonment until June 30, 2023.

191.    Defendants did not have probable cause to detain or imprison Mr. Lopez.

192.    In fact, Defendants possessed plainly exculpatory evidence proving that Mr. Lopez could not have committed the crimes for which he was arrested.

193.    Defendants had actual knowledge that would lead them to conclude that Mr. Lopez could not have committed the crimes for which they imprisoned him.

194.    Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information, including information provided by Mr. Lopez and Mr. Lopez's cell phone, which would lead them to conclude that the perpetrator could not have been Mr. Lopez.

195.    Mr. Lopez was held in confinement for approximately 111 hours prior to his release.

196.    Mr. Lopez was aware that he was being confined despite his innocence.

197.    Defendants were aware that there was not sufficient evidence to arrest and imprison Mr. Lopez. Specifically, they knew that they lacked an arrest warrant or probable cause and that evidence in their possession showed that Mr. Lopez could not have been the perpetrator of the underlying crimes. Despite that knowledge, Defendants unreasonably ignored the contradictory information they had and imprisoned Mr. Lopez in violation of his constitutional rights.

198.    Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to Mr. Lopez's federally protected rights, entitling him to an award of punitive damages against Defendants.

199.    As a direct and proximate result of the actions of Defendants, Mr. Lopez has suffered damages in an amount in excess of $11,100,000 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT 3

### State Law Tort Claim – False Arrest and False Imprisonment
*Against All Defendants*

200.    The facts and allegations set forth in all previous paragraphs are reasserted here.

201.    By engaging in the above-described actions, including arresting Mr. Lopez without probable cause or a warrant and imprisoning Mr. Lopez despite having access to plainly exculpatory evidence, Defendants intentionally restricted Mr. Lopez's freedom of movement without legal right.

202.    By engaging in the above-described actions, including arresting Mr. Lopez without probable cause or a warrant and imprisoning Mr. Lopez despite having access to plainly exculpatory evidence, Defendants intentionally used force, words, or acts which Mr. Lopez was afraid to ignore and to which he reasonably believed restricted he must submit.

203.    As a direct and proximate result of the actions of Defendants, Mr. Lopez has suffered damages in an amount in excess of $11,100,000 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT 4

### State Statutory Claim – Illegal Search Pursuant to Virginia Code § 19.2-59
*Against all Defendants*

204.    The facts and allegations set forth in all previous paragraphs are reasserted here.

205.    By conducting a warrantless search of the curtilage of Mr. Lopez's home and of his person without probable case, Defendants violated Mr. Lopez's rights under the Fourth

Page **33** of **35**

Amendment to the United States Constitution and, as a result, committed malfeasance in office pursuant to Virginia Code § 19.2-59.

206.    Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to Mr. Lopez's federally protected rights, entitling him to an award of punitive damages against Defendants.

207.    As a direct and proximate result of the actions of Defendants, Mr. Lopez has suffered damages in an amount in excess of $11,100,000 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## REQUEST FOR RELIEF

Mr. Lopez respectfully requests that this Court:

208.    Enter judgment in Mr. Lopez's favor on his claims against Defendants, joint and several, in an amount exceeding $11,100,000 exclusive of costs and interest, plus attorneys' fees as authorized by law, the exact amount to be proven at trial;

209.    Declare that Defendants' conduct, as set forth above, violated 42 U.S.C. § 1983;

210.    Award Mr. Lopez damages to compensate him for the harm he suffered as a result of Defendants' unlawful conduct;

211.    Award Mr. Lopez punitive damages against Defendants, joint and several, with respect to Mr. Lopez's claims, the exact amount to be proven at trial;

212.    Award Mr. Lopez reasonable expenses incurred in this litigation, including attorney and expert fees, pursuant to 42 U.S.C. § 1988; and

213.    Order such other and further relief as may be deemed just and proper.

**TRIAL BY JURY IS REQUESTED.**

**KEVIN LOPEZ**

Page **34** of **35**

By:    /s/ Sharif L. Gray
       Counsel

Sharif L. Gray (VSB No. 96221)          Benjamin R. Rand (VSB No. 78956)
Gray B. Broughton (VSB No. 46692)       Blackburn, Conte, Schilling & Click, P.C.
Zachary P. Grubaugh (VSB No. 83944)     300 W. Main Street
The Broughton Law Firm, PLLC            Richmond, VA 23220
9701 Gayton Road, Suite 12              Telephone: (804) 782-1111
Henrico, VA 23238                       Facsimile: (804) 648-3914
Telephone: (804) 613-3800               brand@blackburnconte.com
Facsimile: (804) 250-5069               *Counsel for Plaintiff*
sharif@graybroughton.com
gray@graybroughton.com
zac@graybroughton.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be served by the ECF system on October 7, 2024 to:

John D. McChesney (VSB No. 44326)
Senior Assistant County Attorney
County of Henrico
P.O. Box 90775
Henrico, VA 23273-0775
*Counsel for Defendants*

                                   /s/ Sharif L. Gray
                                   Counsel